| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Public Bikes, Inc.** |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | 20-30310 |

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11     12/17

Public Bikes, Inc.'s Plan of Reorganization, Dated April 8, 2020



**Background**

   A.   *Brief History of the Debtor*

   The Debtor designed, caused to be manufactured, marketed and sold bicycles from 2009 through 2017 under the name "PUBLIC Bikes."   In 2017, the Debtor sold its business assets to BikeSmart, Inc. and granted a license to its intellectual property assets to BikeSmart, Inc.(the "BikeSmart Agreements").   Since that time, the Debtor has been performing under the BikeSmart Agreements and monitoring BikeSmart's performance under those agreements.   Since entering into the BikeSmart Agreements, the Debtor's principal source of revenues has been payments from BikeSmart.

   The BikeSmart Agreements allow BikeSmart to control the Debtor's website and to sell bicycles branded with the Debtor's name.   The BikeSmart Agreements contemplate quarterly earn-out payments over a 10-year period based on 5% of the cost of PUBLIC products purchased by BikeSmart from suppliers/manufacturers.   If the earn-out payments do not meet threshold amounts for the first three years, BikeSmart is obligated to make certain minimum payments totaling $350,000.   The final remaining minimum payment due is $200,000, payable by January 31, 2020.

   Under the BikeSmart Agreements, the earn-out payments may continue through September 7, 2027, depending on BikeSmart's purchases of PUBLIC products..   If the earn-out and minimum payments reach a total of $500,000, BikeSmart will acquire PUBLIC's intellectual property for no additional payment.   A summary of the minimum and maximum payments to be received from BikeSmart under the BikeSmart Agreements is set forth below.

   Minimum BikeSmart Payments:          $200,000 payable by January 31, 2021

   Maximum BikeSmart Payments:          No maximum.   Earn-out payments amounting to 5% of the cost of all PUBLIC products purchased will continue through September 7, 2027.

   (The Plan contemplates the Debtor's continued performance under the BikeSmart Agreements.   The Debtor doubts that there could be an economic benefit in attempting to breach the BikeSmart Agreements.   The Plan contemplates that the Debtor will distribute the payments received under the BikeSmart Agreements ratably to unsecured creditors from time to time.)

   In 2017, as part of entering into the BikeSmart Agreements, The Debtor terminated retail operations at 547-551 Hayes Street, San Francisco (the "Premises") and subleased the Premises.   In 2018, the subtenant breached the sublease and vacated the Premises.   The Debtor's claims against the sub-tenant for breach of the sublease are of unknown collectability.

   In 2019, the landlord of the Premises, 547-551 Hayes LLC (the "Landlord") filed suit against the Debtor for breach of its lease.   The Landlord asserts that it is owed $216,669.27 on account of the breach of the lease, which the Debtor disputes.

   On January 2, 2020, the Landlord sought and obtained a Writ of Attachment, pursuant to which it caused the Sheriff to seize and hold the funds in the Debtor's bank account, aggregating $85,022.37.   It subsequently sought and obtained an Assignment Order which allowed it to seize and freeze in its attorney's trust account the 2020 payment from BikeSmart in the amount of $40,351.13.   The foregoing amounts, aggregating $125,373.50 are referred to as the "Attached Cash".   Under applicable California law, attached funds must be released if a bankruptcy case is filed within 90 days of the attachment.   The instant case was filed on the 89th day after the Right to Attach Order was entered, and the Debtor has undertaken efforts to obtain the Attached Cash so that it may be distributed ratably among all creditors under this Plan.

   B.     *Liquidation Analysis*

   A liquidation analysis assumes that the case is converted to a case under Chapter 7 of the Bankruptcy Code, a bankruptcy trustee is appointed, the bankruptcy trustee liquidates all of the assets s/he is permitted to liquidate, and thereafter distributes the proceeds to creditors.   The liquidation analysis attempts to determine what would ultimately be distributable to unsecured creditors under those circumstances (the "Liquidation Amount").

   In this case, the receipts to the estate in a liquidation would be equal to or less than the amounts to be received by the Debtor for the distribution to creditors.   The only meaningful source of receipts are payments under the BikeSmart Agreement.   In all likelihood, they would be identical in a liquidation.   (It is possible that BikeSmart could assert a deduction or discount against a trustee which would not prevail against the Debtor due to its greater familiarity with the BikeSmart Agreements.)

The expenses in a liquidation would likely be greater than the expenses to be incurred under the Plan. A liquidation would impose on the estate an additional layer of administrative expenses, including the fees and costs of the Trustee, his or her counsel, and his or her accountants. None of these professionals are familiar with the underlying facts and circumstances, so administration by a liquidating trustee will necessarily prove more expensive and/or less effective.

While it does not admit of easy quantification, administration of the Debtor's assets by a liquidating trustee will necessarily prove more expensive, and possibly less successful, than under the Plan. A liquidation analysis must conclude that creditors will fare better under the Plan, but in any event not worse, than they would fare under a liquidating bankruptcy case.

### C. Projections Regarding Performance Under the Plan

The Plan provides for a distribution of the funds received from BikeSmart under the BikeSmart Agreements. As noted above, the only unpaid mandatory payment under the BikeSmart Agreements is $200,000 payable in January, 2021. Additional payments are potentially recoverable under the BikeSmart Agreements, but only if BikeSmart continues to purchase PUBLIC products from suppliers. A summary of the minimum and maximum payments to be received from BikeSmart under the BikeSmart Agreements is replicated below.

Minimum BikeSmart Payments:     $200,000 payable by January 31, 2021

Maximum BikeSmart Payments:     No maximum. Earn-out payments amounting to 5% of the cost of all PUBLIC products purchased will continue through September 7, 2027.

### Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Public Bikes, Inc. (the *Debtor*) from (a) funds that were seized in certain pre-bankruptcy litigation, and (b) future payment(s) of BikeSmart, Inc. under its asset purchase agreement and intellectual property license (collectively, the BikeSmart Agreements")..

This Plan provides for:     **0**   classes of priority claims;

                                       **1**   classes of secured claims;

                                       **1**   classes of non-priority unsecured claims; and

                                       **1**   classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 25 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

**Your rights may be affected. you should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** ................................ | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)). **The Debtor believes that there are no claims entitled to treatment in Class 1.** |
| 2.02 | **Class 2** ................................ | The claim of Banchero Law Firm LLP, to the extent allowed as a secured claim under § 506 of the Code. **The Debtor believes that this claim should be allowed in the amount of approximately $15,000.** |
| 2.03 | **Class 3** ................................ | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.04 | **Class 4** ................................ | Equity interests of the Debtor. (If the Debtor is an individual, change this heading to *The interests of the individual Debtor in property of the estate*.) |

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim arising before the Confirmation Hearing and allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |

| | | |
|---|---|---|
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid on the Effective Date or upon allowance, if later. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code |

### Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order. |
| Class 2 – **Secured claim of** [*Insert name of secured creditor.*] | ☐ Impaired<br>☒ Unimpaired | The Class 2 Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order. |
| **Class 3 – Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | Class 3 Claims will be paid ratably from time to time as cash is accumulated for their payment. |
| Class 4 - **Equity security holders of the Debtor** | ☒ Impaired<br>☐ Unimpaired | Equity holders will enjoy no recovery under this Plan |

### Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claim:** | A disputed claim is a claim that has not been allowed or disallowed [by a final nonappealable order], and as to which either:<br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim:** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final nonappealable order. |
| 5.03 | **Settlement of disputed claims:** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes the following executory contracts and unexpired leases as of the effective date:<br>Any and all agreements with BikeSmart, Inc. and Headland Ventures, LLC. |
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. |

### Article 7: Means for Implementation of the Plan

The Debtor will recover the funds seized or attached in pre-bankruptcy litigation. After paying secured and administrative priority claims, those funds, and all future receipts from BikeSmart or otherwise, will be distributed ratably to general unsecured creditors in Class 3. See Attachment re: Administration under Consensual and Non-Consensual Confirmation.

### Article 8: General Provision

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate Governance** | Confirmation of the Plan shall be deemed to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code |

| Debtor | **Public Bikes, Inc.** | Case number (*if known*) 20-30310 |
|---|---|---|
| | Name | |

8.08 **Retention of Jurisdiction**   The Bankruptcy Court shall retain and have jurisdiction over the bankruptcy case for all purposes provided by the Code, including, without limitation, for the following purposes:

> To determine any and all objections to the allowance of Claims, and all counter-claims asserted against any holder of a Claim, and to allow, disallow, estimate, liquidate or determine any Claim;

> To grant full and complete relief upon the request of the Reorganized Debtor;

> To determine compliance with the provisions of the Debtor's Plan;

> To determine any and all motions for compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Debtor's Plan which accrued on or prior to the Confirmation Date;

> To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date, except as provided in the Confirmation Order, or which shall be commenced on or after the Effective Date and be properly before the Bankruptcy Court;

> To consider any modifications of the Debtor's Plan, any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Order of Confirmation, to the extent authorized by the Code; and

> To implement the provisions of the Debtor's Plan and to issue orders in aid of execution of the Debtor's Plan to the extent authorized by Section 1142 of the Code.

### Article 9: Discharge

9.01 ☐ **Discharge if the Debtor is an individual and § 1141(d)(3) is not applicable.**
Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

☐ **Discharge if the Debtor is a partnership and § 1141(d)(3) is not applicable.** On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan.

☐ **Discharge if the Debtor is a corporation and § 1141(d)(3) is not applicable.** On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

> (i) imposed by this Plan; or
> (ii) to the extent provided in § 1141(d)(6).

☒ **No discharge if § 1141(d)(3) is applicable**. In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

### Article 10: Other Provisions

> If the Plan is consensually confirmed, Professionals employed by the Reorganized Debtor shall be paid in the ordinary course by the by the Reorganized Debtor and need not submit fee applications with respect to services performed after the Confirmation Date.

Respectfully submitted,

**X**  /s/ *Gregory Sherwood Cohelan*            **Gregory Sherwood Cohelan**
[Signature of the Plan Proponent]                      [Printed name]

**X**  /s/ *Michael St. James*                  **Michael St. James**
[Signature of the Attorney for the Plan Proponent]     [Printed name]

Official Form 425A          **Plan of Reorganization for a Small Business Under Chapter 11**          page 5

*Administration Under Consensual and Non-Consensual Plan Confirmation*

   The Plan can be approved by the Court regardless of whether it is accepted by creditors or not.   There are some differences in the administration if creditors accept the Plan or do not, and those differences all suggest that creditors will be better served by voting for the Plan.

   If the Plan is accepted by creditors, the Debtor will administer the Plan, likely at no charge.   The Debtor will administer the objection to claim process.   The only claim as to which an objection is likely is the Landlord's claim, and that objection will be administered by the Debtor's counsel who litigated the Landlord's lawsuit for a year and thoroughly understands the merits and demerits of the claim.   The Debtor is optimistic that it can negotiate an agreement on the amount of the Landlord's claim promptly.   The only other tasks to be performed under a consensual Plan are the administration of the BikeSmart agreements and the distribution of funds to creditors.   The Debtor expects that both of these functions can be handled at nominal expense to the estate.

   On the other hand, under a non-consensual Plan, the Trustee is required to evaluate all claims and prosecute such objections as he deems appropriate.   Without the Debtor's institutional memory, the Trustee could expend material efforts evaluating claims.   If he proceeded without engaging Debtor's litigation counsel, he would lack information about the merits and demerits of the Landlord's claim, potentially either expending material resources developing that information, or allowing the Landlord's claim in amounts that are not warranted.

   Similarly, without institutional memory, the Trustee might face difficulties performing under the BikeSmart agreements, or requiring performance by BikeSmart under those agreements.   Finally, the Trustee would likely charge some fees associated with administering distributions to creditors.   All of the Trustee's efforts will be billed at his hourly rate, and must be paid in full before there can be a distribution to general creditors.

   In sum, the Plan is highly likely to be confirmed with or without creditor consent.   If it has been confirmed without creditor consent, there will be additional expenses associated with the Trustee's administration of the estate which will reduce creditors' recovery to some extent.